UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IRMA STEPHENS | * | CIVIL ACTION NO. |
| | * | |
| | * | JUDGE |
| VERSUS | * | |
| | * | |
| THE BOARD OF SUPERVISORS OF the | * | MAGISTRATE JUDGE |
| UNIVERSITY OF LOUISIANA SYSTEM | * | |
| (Southeastern Louisiana University) | * | JURY DEMAND |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

The Plaintiff, Irma Stephens, through undersigned counsel, respectfully represents as follows:

1.

The plaintiff is an African-American female and a citizen of the United States of America residing in the State of Louisiana with the mailing address of P.O. Box 146, St. Gabriel, Louisiana 70776.

2.

The Defendant, The Board of Supervisors of the University of Louisiana System, is a state-funded public university located in Hammond, Louisiana, and is a member of the University of Louisiana System.

3.

This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e *et seq.*) and the United States, and has venue because Defendant's unlawful employment practices were committed in this judicial district.

1

4.

The Plaintiff has worked for the Defendant since April of 2008, when she was hired as a Custodian I at the Livingston Literacy and Technology Center at the Walker Campus of Southeastern Louisiana University in Hammond, Louisiana. The Plaintiff has always been a dedicated employee who has performed her job diligently and with her employer's best interests in mind.

5.

Racial discrimination against Plaintiff by the defendant began when Joan Gunter, a Caucasian employee, returned to the Walker Campus as Director of Literacy and Technology Center at Southeastern Louisiana University, and created conflict between Plaintiff and the Administrative Assistant, Wendy Cascio, a Caucasian co-worker.

6.

Gunter also engaged in a series of harassments against Plaintiff for no apparent reason by yelling at Plaintiff, isolating the Plaintiff from certain offices even though it is part of her written job responsibilities to clean these offices, stripping away job duties from the plaintiff, and discouraging Plaintiff from filing a grievance.

7.

On May 5, 2014, believing that Gunter's actions were motivated by race, because [Plaintiff is the only African-American employee at the Walker Campus], Plaintiff filed a formal grievance asserting specific instances of race-based discrimination and harassment, along with supporting documentation.

8.

On May 27, 2014, Jeffrey Temple, Assistant Vice President of Academic Program at Southeastern Louisiana University, issued a response to Plaintiff's grievance indicating that he could not determine whether incidents of harassment had occurred, but stated that it was unacceptable for an employee, regardless of rank to raise their voice to someone in the work place. Temple also recognized that a large number of emails had been directed to Plaintiff over a short period of time and that many of the topics discussed in the emails would have been better addressed in person. Despite these findings, no action was taken to resolve the grievance.

9.

On June 12, 2014, Plaintiff appealed the grievance response to Kevin Brady, Director of Human Resources, Employee Relations, Immigration (H Visas), EEO and Diversity, at Southeastern Louisiana University. The appeal addressed the non-conclusive nature of Temple's response and requested that action be taken to resolve Plaintiff's complaints.

10.

On July 1, 2014, Brady submitted a response to Plaintiff's appeal that was biased and non-responsive, but that created new issues and failed to address some of the issues Plaintiff had raised in her grievance.

11.

On July 16, 2014, Plaintiff appealed Brady's non-responsive grievance response to John L. Crain, President of Southeastern Louisiana University.

12.

Plaintiff received a response from Wendy Lauderdale on behalf of President Cain, but again no action was taken to resolve her grievance.

13.

After filing the grievance and subsequent appeals, the race-based harassment intensified and increased, and Gunter then embarked on a continued pattern of harassment and aggression toward Plaintiff. First, Gunter's performance evaluation of Plaintiff dated August 14, 2014, contained adverse comments that stated "Irma needs improvement in the area of cooperation and interpersonal relations."

14.

Plaintiff submitted a letter in response to the August 14, 2014, adverse comment indicating that Gunter had signed off on Plaintiff's immediate supervisor's, Brad Borland's evaluations of "exceptional" and "exceeds exceptional" for the previous five (5) years, and therefore it was unlikely that Plaintiff's performance had suddenly changed significantly. Furthermore, Brad Borland gave Plaintiff an "exceptional" evaluation on August 1, 2013 which stated "Irma displays exceptional work and has an excellent ethic. Irma is an asset to the cleanliness and safety of the Livingston Center," and Gunter signed off on it.

15.

On September 5, 2014, a letter of reprimand was issued to Plaintiff at the request of Gunter, alleging that Plaintiff exhibited disrespectful and unprofessional conduct when she suggested to Gunter that her behavior on a particular day was in retaliation for filing a grievance.

16.

On September 12, 2014, Plaintiff submitted a response Gunter's reprimand, denying that her conduct was disrespectful or unprofessional and again reiterating her concerns that the reprimand was in reprisal for filing the grievance.

17.

On October 6, 2014, Plaintiff was once again issued a reprimand at the request of Gunter because Plaintiff failed to "time" how long it took for the floors in the bathroom to dry after they had been mopped.

18.

On October 10, 2014, Plaintiff submitted a response to Gunter's reprimand, stating that she did not ignore her request, but that she did not have a watch or clock, nor was she provided with one to use in order to comply with Gunter's unusual request.

19.

On January 6, 2015, Gunter recommended that Plaintiff be suspended for one day pursuant to a complaint received by Kim Albin, Director of the Livingston Parish School System, whom Gunter alleged had filed a complaint against Plaintiff for the "disrespectful" way in which Plaintiff spoke to Albin's secretary, Ms. Debra. However, Ms. Debra, Albin's Secretary, never filed such a complaint against Plaintiff.

20.

On January 14, 2014, Plaintiff provided a response to the pre-disciplinary letter stating that she did not speak to Ms. Debra in a disrespectful tone.

21.

On February 3, 2015, Plaintiff was on a supervisory plan in lieu of suspension to "improve her communication and interaction with her supervisor, co-workers, and customers."

22.

On February 10, 2015, Plaintiff submitted a letter objecting to the proposed supervisory plan because it was unwarranted, and it was being implemented in retaliation for the grievance

Plaintiff had filed against Gunter. The supervisory plan required Plaintiff to take an online training course, which she passed, that discussed issues faced by personnel in clerical positions, and to also take a diversity class at the Claiborne Center in downtown Baton Rouge, which she also passed; the training courses were inappropriate for a custodian position such as the one in which Plaintiff was employed.

23.

In addition to issuing reprimands, Gunter also engaged in a series of harassing conduct geared towards Plaintiff, after Plaintiff filed a grievance complaint against Gunter. At some point Gunter decided that the classrooms must be individually cleaned and that the classrooms not being cleaned must be locked. Gunter relied on a provision of a lock-down procedure, mostly applies in the event of an intruder, in support of her reasons for keeping the classrooms locked. However, this provision is only applicable in the event of an emergency. Gunter walks the halls approximately five (5) to ten (10) times while Plaintiff is cleaning the classrooms to see if a classroom door is open.

24.

Gunter requested that Plaintiff move the front doormats closer to the door. After Plaintiff complied with this request Gunter complained that the mats were not close enough to the door, even though she had not specified how close to the door she wanted the mats placed.

25.

In October, 2014, Plaintiff took a half a day off of sick leave. Before leaving, Plaintiff notified the Human Resources Department, who advised her how to log her time into the system, which she did prior to leaving. Later, Plaintiff was notified that someone had changed the time she had requested off. When Plaintiff notified Wendy Cascio, the Administrative Assistant,

about this, Casio notified Gunter that her time had been changed in the system, but it was later changed back by Cascio, and Plaintiff was blamed for entering in the wrong time. Plaintiff had entered the time in correctly the first time.

26.

Gunter has also placed Plaintiff in an unsafe situation by not using the two-way radio to communicate with her. The radio, which had previously been used since 2008 to communicate with Plaintiff, was no longer used once Gunter returned to the Center. The radio is a proper method of communicating with a custodian, such as Plaintiff, for obvious reasons, including that it allows Plaintiff to receive urgent information, which email communication does not. Most recently, the campus had a lock down drill in which Plaintiff was not notified by Gunter. Plaintiff is fearful that she will not be notified in the future of an emergency situation because Gunter has discontinued the use of the two-way radio to communicate with Plaintiff.

27.

Defendant's conduct constitutes racial discrimination, race-based harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.

28.

The Defendant's conduct was more than sufficient to dissuade and discourage a reasonable employee from asserting a complaint of racial discrimination.

29.

As a result of Defendant's unlawful employment practices, the Plaintiff has suffered significant mental and emotional distress and anguish for years. Plaintiff has suffered loss of self esteem, loss of enjoyment of life, and damage to her professional reputation.

30.

The plaintiff is entitled to such compensatory damages as are reasonable in the premises.

31.

The plaintiff requests trial by jury.

32.

Plaintiff Stephens received a right to sue notice from the United State Department of Justice in regards to EEOC Charge number 461-2015-01038 on or about February 22, 2016. Plaintiff has timely filed this complaint within ninety (90) days of receipt of these notices.

**WHEREFORE**, the Plaintiff, Irma Stephens, respectfully prays that this Court, after due proceedings had, enter the following judgment in accordance with the provisions of Title VII of the Civil Rights Act of 1964 :

- a. Declaring the rights of the parties and findings that the aforementioned conduct of the defendant was in violation of Title VII;
- b. Ordering the Defendant to pay Plaintiff compensatory and punitive damages, legal interest, attorneys' fees, costs and litigation expenses; and
- c. Ordering such other additional relief as this Court deems necessary or proper.

RESPECTFULLY SUBMITTED,

*/s/ J. Arthur Smith, III*
**J. ARTHUR SMITH, III (#07730)**
**SMITH LAW FIRM**
830 North Street
Baton Rouge, LA 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
jasmith@jarthursmith.com

8