UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IRMA STEPHENS, <br>    Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-6885 |
| THE BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM, <br>    Defendant | SECTION "E" (5) |

## ORDER AND REASONS

Before the Court is the Defendant's Motion for Summary Judgment.[1] The Plaintiff opposes this motion.[2] For the following reasons, the Defendant's Motion for Summary Judgment is **DENIED.**

## BACKGROUND

Plaintiff, Irma Stephens, filed her initial complaint in this Court on May 23, 2016.[3] Plaintiff is an African-American woman who alleges she was subject to racial discrimination, race-based harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Louisiana state law while she was employed by the Defendant as a custodian. Plaintiff further alleges that the Defendant retaliated against her as a result of her filing a grievance with her employer and a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

On May 5, 2014, Plaintiff filed a grievance with her employer, the Defendant, alleging she was being subjected to discrimination on account of her race. On or about

---

[1] R. Doc. 54.
[2] R. Doc. 69.
[3] R. Doc. 1.

1

April 2, 2015, Plaintiff filed a charge with the EEOC alleging she was being subjected to racial discrimination and race based harassment and was being retaliated against for her filing of her May 5, 2014 grievance.

On August 16, 2017, during a pretrial conference held in chambers, counsel for the Plaintiff notified the Court that Plaintiff has withdrawn her claims for discrimination and race-based harassment under Title VII and Louisiana law.[4] The Plaintiff's claims for racial discrimination and hostile work environment under Title VII and Louisiana law are dismissed with prejudice.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "An issue is material if its resolution could affect the outcome of the action."[6] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[7] All reasonable inferences are drawn in favor of the nonmoving party.[8] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[9]

---

[4] *See* R. Doc. 81.
[5] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[6] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[7] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[9] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[10] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[11]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[12] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[13] When, however, the movant is proceeding

---

[10] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[11] *Celotex*, 477 U.S. at 322–24.
[12] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[13] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[14] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[15] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[16] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[17]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[18]

---

[14] *Celotex*, 477 U.S. at 332–33.
[15] *Id.*
[16] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[17] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[18] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

**LAW AND ANALYSIS**

Title VII "forbids retaliation by employers against employees who report workplace race or gender discrimination."[19] Title VII retaliation claims are analyzed under a modified *McDonnell Douglas* burden-shifting approach.[20] Under this approach, if the plaintiff demonstrates a *prima facie* case of retaliation, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision not to promote the plaintiff.[21] If such a showing is made, the burden shifts back to the plaintiff to establish that the employer's proffered reason is a "pretext for the actual retaliatory reason."[22]

During the August 16, 2017 pretrial conference, counsel for Plaintiff confirmed that her only remaining claim is for retaliation in violation of Title VII and Louisiana law.[23] Counsel for the Plaintiff also acknowledged that each of the individual acts she has alleged may not, alone, qualify as a material adverse retaliatory action. Instead, counsel represented Plaintiff's argument is that the continuous nature of the alleged retaliatory acts collectively make the alleged retaliation materially adverse.

During the August 16, 2017 pretrial conference, counsel for Plaintiff confirmed that her retaliation claim is based on the following events: (1) an adverse performance evaluation issued by the Plaintiff's supervisor Joan Gunter on August 14, 2014; (2) a

---

[19] *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 273 (2009).
[20] *See, e.g., Richardson v. Monitronics International*, 434 F.3d 327, 332–33 (5th Cir. 2005).
[21] *See, e.g., McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)).
[22] *Id.*
[23] *See id.* Because Louisiana's anti-discrimination statue is substantively the same as Title VII, the Court need not address Plaintiff's state law claims. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 n.4 (5th Cir. 2007) ("Louisiana's anti-discrimination statute, Louisiana Revised Statutes section 22:301 *et seq*, is "substantively similar" to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance. Consequently, the outcomes of McCoy's statutory discrimination and retaliation claims will be the same under federal and state statutes. We therefore analyze the issues only under the applicable federal precedents." (citations omitted)).

reprimand issued on September 5, 2014 for using a printer to make personal copies; (3) a reprimand issued on October 6, 2014 for not accurately timing how long it takes for the floors to dry in the bathroom; (4) a pre-disciplinary notice for allegedly being disrespectful to two employees who worked with the Livingston Parish School System on January 6, 2015; (5) a reprimand issued on September 21, 2016 for alleged "rudeness" to University guests; (6) a reprimand issued on October 3, 2016 for not frequently emptying the trash; and (7) Plaintiff's reassignment to the Hammond, Louisiana campus on October 7, 2016.[24]

I. <u>Scope of Plaintiff's Retaliation Claim</u>

A plaintiff may not pursue Title VII claims in federal court unless she has exhausted all of the available administrative remedies.[25] "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."[26]

Typically, under Title VII, a plaintiff must exhaust all of the claims alleged in her complaint by filing a charge with the EEOC and receiving a right to sue letter. Pursuant to Title VII, a charge is timely when it is filed with the EEOC within 180 days of the alleged illegal conduct.[27] However, because Louisiana is a "deferral" state, the filing period is

---

[24] *See* R. Doc. 69 at 2-4. Counsel for Plaintiff also listed the termination of her employment with the Defendant in May of 2017. As discussed in greater detail below, the termination of Plaintiff's employment with the Defendant is considered outside the scope of this case because these allegations were not included in any of the Plaintiff's complaints.
[25] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *Hall. v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007). *See also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002). *See also Vicknair v. La. Dept. of Public Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014) (explaining that the administrative exhaustion is required because "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discriminaton claims.") (quoting *Pacheco v. Mineta*, 338 F.3d 783, 788-89 (5th Cir. 2006)).
[26] *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)).
[27] 42 U.S.C. § 2000e-5(e)(1).

extended to 300 days.[28] With respect to the alleged retaliatory events occurring before the Plaintiff filed her charge with the EEOC on April 2, 2015, events occurring prior to June 6, 2014 may not be considered part of Plaintiff's retaliation claim.[29]

With respect to the alleged retaliatory events occurring after the Plaintiff filed her charge with the EEOC, the Fifth Circuit, in *Gupta v. East Texas State University*, explained an exception to the rule requiring exhaustion of administrative remedies that allows a plaintiff to pursue an unexhausted retaliation claim if the acts underlying the retaliation claim came after and in response to the filed EEOC charge.[30] Under the *Gupta* exception, Plaintiff is not required to exhaust her claims with respect to actions she alleges occurred after and in retaliation to her filing her charge with the EEOC.

Accordingly, the Plaintiff is considered to have exhausted her remedies with respect to all retaliatory events alleged in Plaintiff's Complaint,[31] First Amended Complaint,[32] and Second Amended Complaint.[33]

---

[28] *See, e.g., Deleon v. General Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014).

[29] June 6, 2014 is 300 days before April 2, 2015. There is an exception to the 300 day rule known as the "continuing violations doctrine." *See, e.g, Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)). Plaintiff, however, has not made any allegations that the continuing violations doctrine applies to her claims.

[30] *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981). The Court recognizes that there is some debate whether *Gupta* was abrogated by the Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Phipps v. Hous. Auth. Of New Orleans*, 2016 WL 164916, at *4 (E.D. La. Jan. 13, 2016) ("Whether *Gupta* is still good law, however, is the subject of some debate. Indeed, the Circuits that have considered whether *Gupta*-like rules were abrogated by the Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) are split.") (collecting cases).

[31] R. Doc. 1.

[32] R. Doc. 31.

[33] R. Doc. 67. The Plaintiff, in her opposition to the Defendant's Motion for Summary Judgment mentions that she received a letter on May 12, 2017 stating that if she did not return to work from her FMLA leave by May 22, 2017, her employment with the Defendant would be terminated. R. Doc. 69 at 5. Because these allegations were not included in the Plaintiff's complaints, they are considered outside the scope of this case.

II. Plaintiff's *Prima Facie* Case

To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action."[34]

The Defendant, in its Motion for Summary Judgment, specifically argues that it is entitled to summary judgment on the Plaintiff's retaliation claim because she cannot prove that she suffered an adverse employment action.[35]

   a. Plaintiff Participated in a Protected Activity

Defendant does not dispute that the Plaintiff participated in an activity protected by Title VII. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[36] Plaintiff participated in two separate protected activities under Title VII. Plaintiff first participated in a protected activity on May 5, 2014 when she filed her formal grievance with her employer regarding discriminatory actions she believed were motivated by race. Plaintiff also participated in a protected activity on April 2, 2015 when she filed her formal charge with the EEOC.

---

[34] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).
[35] R. Doc. 54-1 at 14.
[36] *Ackel v. Nat'l Commc'ns. Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educ. Fund.*, 284 F.3d 642, 657 (5th Cir. 2002)).

b.  <u>Whether Plaintiff Suffered an Adverse Employment Action</u>

The Defendant argues it is entitled to summary judgment because the Plaintiff cannot prove that she suffered an adverse employment action.[37] For an employment action to constitute prohibited discrimination, the action must be "materially adverse," meaning that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."[38] The Supreme Court established this objective standard "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[39]

In *Stewart v. Mississippi Transportation Commission*, for example, the Fifth Circuit determined that, as a matter of law, having personal items taken from your desk, having the locks on your office door changed and being chastised by superiors and ostracized by co-workers "do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct."[40] However, employer actions such as demotion, denial of a pay increase, and failure to promote, are materially adverse employment actions.[41] The Fifth Circuit has also noted that the imposition of a heavier workload may constitute an adverse employment action.[42]

---

[37] R. Doc. 54-1 at 14.
[38] *See Stewart*, 586 F.3d at 331 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[39] *Id.*
[40] *Id.* at 332 (quoting *White*, 548 U.S. at 68).
[41] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (collecting cases). *See also*, *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").
[42] *Stewart*, 586 F.3d at 332.

"Whether a particular reassignment is materially adverse depends on the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all circumstances."[43]

Plaintiff argues the following are materially adverse employment actions: (1) an adverse performance evaluation issued by the Plaintiff's supervisor Joan Gunter on August 14, 2014; (2) a reprimand issued on September 5, 2014 for using a printer to make personal copies; (3) a reprimand issued on October 6, 2014 for not accurately timing how long it takes for the floors to dry in the bathroom; (4) a pre-disciplinary notice for allegedly being disrespectful to two employees who worked with the Livingston Parish School System on January 6, 2015; (5) a reprimand issued on September 21, 2016 for alleged "rudeness" to University guests; (6) a reprimand issued on October 3, 2016 for not frequently emptying the trash; and (7) Plaintiff's reassignment to the Hammond, Louisiana campus on October 7, 2016.[44] The Court finds that these adverse actions collectively are sufficient to deter a reasonable person from exercising activities protected by Title VII.[45]

    c. <u>Whether There is a Causal Connection Between Plaintiff's Protected Activities and Alleged Retaliation</u>

In *University of Texas South Western Medical Center v. Nassar*, the Supreme Court held that Title VII retaliation claims must be proved according to traditional

---

[43] *White*, 548 U.S. at 71.
[44] *See* R. Doc. 69 at 2-4.
[45] In *Haire v. Board of Supervisors of Louisiana State University Agricultural and Mechanical College*, the Fifth Circuit explained that there are cases in which there are instances that collectively "rise to the level of a Title VII 'adverse employment acton.'" 719 F.3d 356, 368 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007)).

principles of but-for causation.[46] "This heightened standard 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"[47]

There is some disagreement, however, "among the circuits regarding whether the Supreme Court's holding in [*Nassar*] requires a plaintiff to show but-for causation as part of her prima facie case of retaliation, or only at the third step of the *McDonnell Douglas* framework to rebut an employer's legitimate stated reason for the adverse employment action."[48] In *Smith v. Board of Supervisors of Southern University*, the Fifth Circuit declined to resolve this issue after reasoning that even applying the standard most favorable to the plaintiff, the plaintiff still failed to meet her burden.[49] This Court also declines to resolve this issue as Plaintiff's retaliation claims survive regardless of whether the Plaintiff is required to make a showing of but-for causation in her *prima facie* case or at step three of the *McDonnell Douglas* framework.

In cases with "[c]lose timing between an employee's protected activity and an adverse action against [her]," a plaintiff may satisfy the causation requirement of her *prima facie* case through the evidence of close proximity alone.[50] Plaintiff argues that she received her first negative performance evaluation on August 14, 2014.[51] This first negative performance evaluation was issued only three months after she filed a grievance

---

[46] *See Hernandez v. Metro. Transit Auth. of Harris Cty.*, 2016 WL 7404749, at *4 (5th Cir. Dec. 21, 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---- U.S. ----, 133 S.Ct. 2517, 2533 (2013)).
[47] *Id.* (quoting *Nassar*, 133 S.Ct. at 2533).
[48] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 33 n.4 (5th Cir. 2016) (citing *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 97 & n.12 (3d Cir. 2016). *See also, Hernandez v. Metro. Transit Auth. of Harris Cty.*, 2016 WL 7404749 at *4 n.6; *Smith v. Florida Pars. Juvenile Justice Comm'n*, 2017 WL 1177905, at *9 (E.D. La. Mar. 30, 2017).
[49] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 33 n.4.
[50] *See, e.g., Barnes v. McHugh*, 2013 WL 3561679, at *16 (E.D. La. July 11, 2013).
[51] R. Doc. 69 at 2.

with her employer. The Fifth Circuit "has found that 'a time lapse of up to four months' may be sufficiently close" for the purpose of establishing the causal requirement of a Plaintiff's *prima facie* retaliation case.[52]

In this case, the close proximity in time between the Plaintiff's participation in a protected activity and the first of the collective adverse employment actions is sufficient to satisfy the Plaintiff's burden of establish a *prima facie* case of illegal retaliation.

III. <u>Defendant's Non-Retaliatory Reasons for the Adverse Employment Actions</u>

After a plaintiff has established his or her *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence the existence of a legitimate non-retaliatory reason for its employment actions.[53] The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'"[54] "To meet this burden, the employer must show, through admissible evidence, a legally sufficient reason for not hiring the plaintiff."[55]

Defendant has put forth sufficient non-retaliatory reasons for the adverse employment actions. First, the Defendants attach the September 5, 2014 Letter of Reprimand to their Motion for Summary Judgment in which Kevin Brady, the Human Resources Director at that time, issued a letter describing the incident in which Gunter discovered that Stephens had used the printer in the computer lab for her personal use.[56] This letter provides an explanation of the event and explains why it is inconsistent with

---

[52] *Feist v. Louisiana, Dept. of Justice, Office of the Atty. General*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).
[53] *See McCoy*, 492 F.3d at 557.
[54] *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).
[55] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 202 (5th Cir. 2008) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).
[56] R. Doc. 54-7.

the work and behavior expectations listed on Stephens' Performance Evaluation System Planning document.[57] Second, the Defendant attached the January 6, 2015 pre-disciplinary notice regarding Defendant's alleged rudeness towards co-workers.[58] The notice provides the Defendant with an explanation of the event and explains why this behavior violates the Defendant's policies outlined in its Basic Duties of Employees.[59] The notice also states, "This is not the first incident where you acted in a rude unprofessional manner towards your co-workers," and mentions that the Plaintiff has been reprimanded on two additional occasions.[60] Third, the Defendant attached the September 21, 2016 Letter of Reprimand to its Motion for Summary Judgment.[61] In this letter, Ms. Dupre describes an incident between Ms. Stephens and two guests at the university in which the two guests reported that Ms. Stephens was rude to them for exiting through the side door.[62] The letter also provides the Defendant's policy on "courtesy" and states that although this letter of reprimand is not a disciplinary action and will not be placed in Ms. Stephens' personal record, "[a]ny further violation of this policy may result in disciplinary action."[63] Last, the Defendant has provided the deposition testimony of Tara Dupre, the Director of Human Resources for Southeastern Louisiana University, in which Ms. Dupre testified that her office received a complaint against Ms. Stephens for bullying other employees with the Livingston Parish School Board.[64] Ms. Dupre also testified that it was

---

[57] *Id.*
[58] R. Doc. 54-9.
[59] *Id.* at 2.
[60] *Id.* at 2.
[61] *See* R. Doc. 54-14.
[62] *Id.*
[63] *Id.*
[64] R. Doc. 54-13 at 3. *See also* R. Docs. 54-7, 54-9.

13

this complaint which ultimately led to the decision to transfer Ms. Stephens to the Hammond, Louisiana campus.[65] The Court finds that the Defendant, through the attachment of the above-described evidence to its Motion for Summary Judgment, has satisfied its burden in articulating non-retaliatory reasons for the alleged retaliatory actions.

IV. <u>Pretext</u>

The third step of the *McDonnell Douglas* requires the Plaintiff to demonstrate that her employer's proffered non-retaliatory reasons are merely pretext for the actual retaliatory reason. Although, as discussed above, it is unclear whether the *Nassar* but-for causation is a part of a plaintiff's *prima facie* case of retaliation, it is clear that a plaintiff, in order to prevail at trial, must demonstrate but for causation to satisfy the third step of the *McDonnell Douglas* framework by proving her protected activity was the but-for cause of the adverse employment action.[66]

"In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that 'the adverse [employment] action would not have occurred 'but for'' the employee's decision to engage in an activity protected by Title VII."[67] The Fifth Circuit has "acknowledged that course of employer conduct can be relevant, and [has] held that 'the combination of suspicious timing with other significant evidence of pretext' can warrant

---

[65] *Id.* at 4.
[66] The Supreme Court held that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened motivation causation test. *See Hernandez*, 2016 WL 7404749 at *4 (quoting *Nassar*, 133 S.Ct. at 2533).
[67] *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (citations omitted).

14

denial of a summary judgment motion."[68] The Plaintiff has put forward evidence that prior to her protected activities she received excellent performance evaluations.[69] Plaintiff also has put forward evidence that shortly after filing her grievance with the Defendant, she began receiving performance evaluations that were not as strong, and letters of reprimand and a pre-disciplinary notice critical of her job performance.[70] Plaintiff also has provided evidence that her initial grievance with the Defendant was against Gunter and that her negative performance reviews and reprimands have come at Gunter's direction.[71] The Plaintiff also has put forward evidence that she was qualified for her position at the Livingston Parish Literacy and Technology Center and Ms. Gunter testified during her deposition that she agreed.[72] When viewed in its totality and in the light most favorable to Ms. Stephens, the Court finds that the evidence in the record is sufficient to create a genuine issue of material fact as to whether the Defendant retaliated against Ms. Stephens for activities protected by Title VII.[73] A reasonable jury could choose to believe Ms. Stephens' testimony that she never received a negative performance review or reprimand prior to her protected activities and that the Defendant's articulated reasons

---

[68] *Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 366 (5th Cir. 2014) (quoting *Schakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).
[69] R. Doc. 69-4.
[70] R. Docs. 69-3 at 26-30, 54-7 and 54-9. For example, the September 5, 2014 letter of reprimand stated, "Your response is inconsistent with several work and behavior expectations listed on your Performance Evaluation System Planning document." *See* R. Doc. 54-7 at 1.
[71] *See* R. Doc. 69 at 17. *See also, e.g.,* R. Doc. 54-9 (January 6, 2015 Pre-Disciplinary Notice) ("Pursuant to a request from the Director of the Livingston Literacy Center, Joan Gunter, you are hereby advised that we have received a recommendation for a 1-day suspension without pay for unacceptable, unprofessional behavior that occurred on December 5, 2014.").
[72] *See, e.g.,* R. Doc. 69-6 at 6 (Deposition of Joan Gunter) ("Q: Did you ever have any problems with Ms. Stephens' job performance? A: Not with her cleaning job performance."). The Defendant's response to the Plaintiff's May 5, 2014 grievance also stated, "You also mentioned your disappointment with the loss of certain job responsibilities and that this change isolated you from particular office areas . . . I understand that a restructuring of job responsibilities was deemed necessary and that the change *in no way reflected poor performance.*" R. Doc. 69-6 at 18 (emphasis added).
[73] *See, e.g., Schakelford*, 190 F.3d at 409.

for issuing her negative performance review and reprimands, as well as its decision to transfer Ms. Stephens to the Hammond, Louisiana campus, are pretextual.[74]

The Defendant's motion for summary judgment with respect to the Plaintiff's claims for retaliation pursuant to Title VII and Louisiana law is denied.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's claims for discrimination and race-based harassment pursuant to Title VII and Louisiana law are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment[75] with respect to the Plaintiff's claims for retaliation pursuant to Title VII and Louisiana law is **DENIED**.

**New Orleans, Louisiana, this 27th day of December, 2017.**

*[signature: Susie Morgan]*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] Although Summary Judgment, after viewing the evidence in the light most favorable to the Plaintiff, is not warranted in this case, the Court recognizes that proving her case at trial may prove to be difficult. In order to prevail at trial, Plaintiff will need to prove that *but-for* her protected activities she would not have suffered the alleged adverse employment actions. For example, with respect to the Plaintiff's retaliation claim based on the collective adverse employment action, Plaintiff will need to prove a causal connection between her protected activities and each of the actions that make up the collective adverse employment action. In addition, the large temporal gap between the Plaintiff's protected activities and her transfer to the Hammond, Louisiana campus may make it difficult for the Plaintiff to prove the necessary causation.
[75] R. Doc. 54.